STATE OF CONNECTICUT *v.* REINALDO ARROYO

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and D. SHEA, Js.

Argued April 11—decision released July 1, 1980

*Donald D. Dakers,* assistant public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (state).

COTTER, C. J. In a joint trial to the jury of two separate cases, the defendant was convicted of the crimes of risk of injury to a minor child in violation of General Statutes § 53-21 and of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). Upon the defendant's motion, pursuant to Practice Book, 1978, § 3002, the court ordered consolidation of the appeals from the judgments of guilty which were entered in each case. The defendant raises a single issue on appeal which applies only to the judgment finding him guilty of sexual assault in the second degree. General Statutes § 53a-71 (a) (1). He claims error in the trial court's failure to charge the jury on an affirmative defense to that charge.[1] No appeal has been taken from the judgment against the defendant on the information charging risk of injury to a minor child. Thus, the sole issue on appeal is whether, in

---

[1] "[General Statutes] Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age . . . ."

a prosecution for sexually assaulting a person under fifteen years of age, the trial court erred in refusing to charge the jury that living together by mutual consent in a relationship of cohabitation was an affirmative defense.[2]

From the evidence presented, the jury could reasonably have found the following facts: In late October, 1978, the victim, who was thirteen years old at the time, had run away to the defendant's apartment after she had had an argument with her aunt with whom she was staying while her mother was in Puerto Rico. The victim had gone to the defendant's residence on the night of October 30, 1978, with an older teenage girlfriend and requested permission to stay. After the victim's mother returned from Puerto Rico in November, 1978, she went to the defendant's apartment, found her daughter and took her back home. Nothing untoward happened to the victim during this first stay at the defendant's apartment.

One week later, on the night of November 19, 1978, the victim returned to the defendant's apartment. She returned to the defendant's residence because she heard voices which compelled her to go back. From November 19, 1978, until December 5, 1978, the victim remained at the defendant's home only because of her fear of him. During this three-week period, the defendant, who was forty-eight years old, coerced the victim into having sexual intercourse with him three or four times a week by tying her up, hiding her in a closet, beating her,

[2] General Statutes § 53a-67 (b) reads: "In any prosecution for an offense under this part, it shall be an affirmative defense that the defendant and the alleged victim were, at the time of the alleged offense, living together by mutual consent in a relationship of cohabitation, regardless of the legal status of their relationship."

telling her he would kill her, and threatening her with a gun. The victim remained at the defendant's home because she was afraid of him.

The day after the victim ran away to the defendant's home for the second time, her mother went to the defendant's residence to search for her. The defendant stated she was not there. When the victim's mother went back with a friend, the defendant again denied that the victim was there. Nonetheless, after finding some of the victim's wet clothing at the defendant's home, the women asked the police to help. When questioned by a police officer, the defendant again denied that the victim was at his apartment. The victim's mother returned to the defendant's apartment for the third time on December 5, 1978, in the company of a police officer. The officer found the victim and her girlfriend, who had lived in the defendant's apartment from October 30 until December 5, 1978, in a closet hidden under blankets. The girls looked shocked and they were partially clothed. The victim had been hidden in a closet each time her mother had come to look for her. The police officer also found a .22 caliber handgun at the defendant's residence.

The defendant claimed that he allowed the victim and her girlfriend to remain with him as a favor. He also denied binding and gagging the girls to hide them in a closet. The defendant maintained the girls were hiding from their mothers. On the basis of these claims and certain other evidence, which he argues creates a dispute as to whether the victim voluntarily stayed at his home or remained there due to fear, threats and beatings, the defendant contends that he was entitled to a jury charge on the affirmative defense of "living together by mutual consent in a relationship of cohabitation."

The defendant has conceded that the state established beyond a reasonable doubt the essential elements of the crime of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). These elements are (1) that the defendant engaged in sexual intercourse with another person and (2) that such person is under fifteen years of age at the time.

As a general rule in any affirmative or special defense, the burden of proof rests with the defendant. See *Perley* v. *Glastonbury Bank & Trust Co.*, 170 Conn. 691, 698, 368 A.2d 149; *State* v. *Schweitzer,* 57 Conn. 532, 540, 18 A. 787. See also 29 Am. Jur. 2d, Evidence §§ 129, 156. It is constitutionally permissible for the state to place the burden on a criminal defendant to prove by a preponderance of the evidence elements which would constitute an affirmative defense but which do not serve to negate any essential element of the crime which the state has the burden of proving beyond a reasonable doubt in order to convict. *Patterson* v. *New York,* 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281. Furthermore, it is not error to omit to charge the jury as to an affirmative defense, where the evidence is silent on an element essential to that defense. See *State* v. *Brown,* 163 Conn. 52, 67, 301 A.2d 547; *People* v. *Christensen,* 61 Ill. App. 3d 856, 378 N.E.2d 612; *State* v. *Melchior,* 56 Ohio St. 2d 15, 381 N.E.2d 195; *State* v. *Langley,* 25 Utah 2d 29, 474 P.2d 737.

If we consider the evidence in a light most favorable to supporting the defendant's request to charge, the following facts were put in evidence: The victim and another young woman were staying at the defendant's apartment at their request and the

defendant was doing them a favor by letting them stay because they did not want to be at their homes. The victim and her girlfriend offered to cook and clean if they were allowed to remain and did cook and clean. Further, the victim and her girlfriend were free to come and to go from the defendant's apartment at certain times to clubs and dances with boyfriends.

At most, these facts, which represent the evidence favorable to the defendant in the case concerning the affirmative defense, would establish, if credited, that the defendant was putting up two girls on a temporary basis and that the girls were free to establish relationships with boys of their own age and to go out on dates. At best, this evidence tends to raise the issue of whether the defendant and the victim were "living together by mutual consent" and puts into dispute the question of whether the victim remained at the defendant's residence because of threats, beatings and stories designed to frighten and intimidate her.

Nonetheless, even if we accept that the foregoing evidence tends to raise the issue of whether the defendant and the victim were "living together by mutual consent" and even if we assume without deciding that under the statutory framework a person under the age of fifteen may be considered capable of consenting to a relationship of cohabitation (although consent is irrelevant and not a defense to the crime of sexual assault under § 53a-71 [a] [1]), we are compelled to conclude upon a review of the transcript and the record in this case; Practice Book, 1978, § 3060R; that the evidence was silent on an esssential element of the affirmative defense—whether the defendant and the

victim were living together *in a relationship of cohabitation.* That "cohabitation" is a separate element of the affirmative defense and distinguishable from merely living together is clear from both the plain meaning of the language of the affirmative defense in § 53a-67 (b) and the legal definition of cohabitation. If "cohabitation" was the exact equivalent of "living together" the words "in a relationship of cohabitation" would be redundant and superfluous. Thus, in order to adhere to the legislative intent revealed in the language of statute; *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 57, 392 A.2d 491; and to avoid violating the basic tenet of statutory interpretation that no word or phrase be rendered meaningless; *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 7, 434 A.2d 293; we have looked to the legal definition of "cohabitation" to assess whether the defendant has satisfied his burden of producing evidence to raise the affirmative defense which in the meantime we have assumed arguendo to be available to him.

Cohabitation is generally defined as "living together as husband and wife." E.g., *Dunn* v. *State,* 426 P.2d 993, 995 (Alaska); *Grant* v. *Superior Court,* 27 Ariz. App. 427, 429, 555 P.2d 895; *McAnerney* v. *McAnerney,* 165 Conn. 277, 285, 334 A.2d 437; *State* v. *Schweitzer,* 57 Conn. 532, 538, 18 A. 787; *Matter of Marriage of Walter,* 27 Or. App. 721, 557 P.2d 57. This relationship of living together as man and wife includes many facets of married life in addition to sexual relations. *Grant* v. *Superior Court,* supra. It is the mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual

relations. *Boyd* v. *Boyd,* 228 Cal. App. 2d 374, 378, 39 Cal. Rptr. 400. See also *Dudley* v. *Dudley,* 225 N.C. 83, 85–86, 33 S.E.2d 489 (cohabitation includes marital duties other than sexual relations). There was no evidence in the present case that the defendant, who was forty-eight years old, and the victim, who was thirteen years of age at the time, shared those rights, duties, and obligations which are usually manifested by married people. To reiterate, at best, the evidence reveals that the defendant was allowing two girls to stay at his residence on a temporary basis. For his permission to stay, they were willing to cook and clean, and they were free to date and establish relationships with males of their own age.

The sole possible aspect of cohabitation revealed by the evidence in the case is sexual intercourse between the defendant and the victim.[3] If, however, evidence of sexual intercourse alone were considered sufficient to raise the affirmative defense of cohabitation, the defendant would be entitled to a jury charge on the affirmative defense merely by engaging in the statutorily defined crime. This cannot be, for the nature of an affirmative defense is to enlarge the ameliorative aspects of a statutory crime by focusing on the nature of the offender and the conditions which produce some degree of excuse for his conduct, and not to permit the defendant to exploit the antisocial act itself by turning it into an excuse. See *People* v. *Patterson,* 39 N.Y.2d 288, 306, 347 N.E.2d 898 (*Breitel, J.,* concurring),

---

[3] Significantly, the defendant conceded at oral argument before this court that his relationship with the victim's girlfriend was not one of "cohabitation" even though that relationship was identical to the one the defendant shared with the victim except that sexual intercourse occurred between the defendant and the victim.

aff'd sub nom., *Patterson* v. *New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281. Furthermore, at trial the defendant repeatedly denied that he even engaged in sexual intercourse with the victim. In these circumstances, the trial court did not err in omitting to charge the jury on the affirmative defense of cohabitation. *Brackenridge* v. *State*, 489 S.W.2d 287 (Tex. Crim. App.). See *State* v. *Brown*, 163 Conn. 52, 301 A.2d 547. See also *Patterson* v. *New York*, supra, 209n.

There is no error.

In this opinion the other judges concurred.