[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
support and alimony orders. Both parties appeared in court in response to this application on June 8, 1990 and agreed that in addition to the current orders, the plaintiff would also pay $32.50 per week on an arrearage of $8,000.00, which was found subject to adjustment and/or credits.
On June 8, the plaintiff also requested a three-week continuance to consult with an attorney for assistance in determining the correct amount of the arrearage. The case was continued to July 2, 1990. On July 2, the case was continued to July 23, 1990.
On July 16, 1990, the defendant filed another motion for contempt, alleging a violation of the orders entered by agreement on June 23, 1990.
On July 23, the court had insufficient time to hear the case and it was assigned for August 13, 1990. The alimony and arrearage payments were ordered suspended until August 13. CT Page 1735 The plaintiff indicated that he would be filing a motion for modification of child support and alimony, and it was ordered that all pending motions would be heard contemporaneously on August 13.
On July 26, 1990, the defendant filed a motion requesting an increase in the current support order.
On July 30, 1990, the plaintiff filed a motion requesting a reduction in the current support order and a termination of the periodic alimony on the grounds of cohabitation, citing the decree and Connecticut General Statutes Section 46b-86(b).
The first issue considered in this decision will be the improved since the time of the divorce to justify an increase in the weekly support order.
After leaving Southbury Training School, the plaintiff testified that he held two successive jobs as a ferrier, or blacksmith, and earned almost four to five hundred dollars a week working for other blacksmiths.
His parents live on a horse farm in Oxford and his father is also a blacksmith, as is his brother. These two provide him with additional work at times, but nothing steady and reliable. He is always paid in cash for all of his work.
In 1988, he remarried. His father built the new couple an apartment over their barn on the Oxford farm. The plaintiff often does jobs around his father's farm in exchange for a reduction in rent, but is paid no money.
In February of this year, his second wife, Maureen Mucherino, who also testified, gave birth to a child. After a brief maternity leave, she went back to work part-time and nets approximately $200.00 per week. An additional $55.00 per week is deducted for CHCP health insurance coverage, which covers the second family as well as James Mucherino, Jr. (The plaintiff is obligated by the terms of the decree to provide insurance, no matter what the cost and whether or not it is available to him through employment.) The family's total weekly expenses approach parties' cross motions for a modification of the child support order.
At the time of the divorce, the plaintiff was earning a net weekly income of $198.13 at the Southbury Training School. His liabilities at that time, excluding the two mortgages on the martial home which the defendant assumed responsibility for, totaled approximately $7,000.00. His weekly expenses were $436.26. CT Page 1736
The defendant's weekly net income in 1985 was $200.00. She worked as a waitress at a diner owned by her mother and still works there today. Her liabilities at the time, including the two mortgages on the martial home, exceeded $27,000.00. Her weekly expenses were $336.15.
While the defendant now earns $250.00 per week, she still has a significant amount of liabilities and her weekly expenses, now $438.12, still exceed her weekly net income. There has been no substantial improvement in her situation. She is in poor health, having been diagnosed as having Krohn's disease, and often relies on her mother to help her out financially. She has also given birth to another child since the date of the divorce and has a paternity action pending against a Mr. Gary Drury. She did not present any evidence demonstrating special needs or particular uncontemplated expenses for the care of the minor child, James was necessary, there is no evidence that Mr. Mucherino's financial circumstances have substantially $600.00.
When James and Maureen were first married, she worked two jobs while the plaintiff attempted to get his blacksmith business off the ground. They were able to keep their bills fairly current and even bought the plaintiff a $6,000 motorcycle. Of course, as the plaintiff testified, he had stopped paying his former wife any support or alimony about the time he remarried. His parents' generosity has also helped them get by.
Unfortunately, since the birth of their second child, their financial situation has worsened. She can now work only one job and daycare cost $90.00 per week. After two years, if the plaintiff's testimony is to be believed, the plaintiff's business nets him only $78.00 per week. When the court asked why he didn't just stay home and care for the child, since he was earning less than the cost of daycare, he had no answer.
The current state of the plaintiff's finance is distressing, but it is not the most disturbing aspect of this case. What is most disturbing is Mr. Mucherino's seeming inability to realistically assess his situation. How long does he think he can continue to hold his life together on $78.00 per week?
His attainment of any job, even one paying minimum wage, would improve the plaintiff's financial situation. He certainly has the right to try to make a go of his blacksmithing, but not at the expenses of his former and child, his second family or his parents.
He testified that his blacksmithing business would get CT Page 1737 better once he buys a special vehicle. How does he think he's going to find the means to buy one?
He clearly has the capacity and past work experiences to make more money than he presently does. He is healthy, personable and has a high school diploma. In addition to the blacksmithing skills and the job he once held at Southbury, he has also been a construction laborer earning $8.00 per hour.
While his entrepreneurship would be admirable if he could make a decent living wage and meet his obligations, it is presently impermissible. He asks this court to grant him relief from a minimal support order so he can do what he likes while his ex-wife, his two children and his current wife continue to struggle. It is high time he found reliable, salaried employment.
In appropriate circumstances, a court may consider a party's earning capacity rather than salary earned in determining a motion for modification, especially where earnings appear to have been voluntarily depleted. Johnson v. Johnson, 185 Conn. 573, 576
(1981); Miller v. Miller, 181 Conn. 610, 611-612 (1980); McKay v. McKay, 174 Conn. 1, 2 (1977); Pascal v. Pascal, 2 Conn. App. 472,482 (1984).
The mere fact of remarriage and the needs of a second family need not be considered as grounds for modification unless the party also meet the usual burden of proving that his change in finances is both substantial and involuntary. Riccio v. Riccio,153 Conn. 317, 320 (1966); Lev v. Lev, 10 Conn. App. 570, 573
(1987); Dudley v. Keegan, 1 S.M.D. 13, 15 (1988).
Neither party has met the burden of proof necessary to allow for a modification in the current child support order. The defendant's motion for modification is therefore denied, as is the plaintiff's motion insofar as it pertains to a request for a reduction in the child support order.
The defendant's motion to terminate alimony on the grounds of cohabitation in the context of C.G.S. Section 46b-86(b) is the next issue to be considered.
(Although the plaintiff's brief also requests an order that the house be ordered sold due to the alleged cohabitation, this court declines to consider the issue, as it was not the subject of his motion nor the subject of the court hearing on August 13. Furthermore, the family support magistrate division only has jurisdiction to enforce orders pertaining to child support and alimony.)
Cohabitation has been defined as "the dwelling together of CT Page 1738 man and woman in the same place in the manner of husband and wife. State v. Arroyo, 181 Conn. 426, 432 (1980); McAnerney v. McAnerney. 165 Conn. 277, 285 (1973); Taylor v. Taylor, 17 Conn. App. 291,293 (1989); Wolk v. Wolk, 191 Conn. 328, 332 (1983). Cohabitation is "the natural assumption of those marital rights, duties and obligations which are usually manifested by married people, including, but not necessarily dependent on, sexual relations." State v. Arroyo, 181 Conn. 432.
Section 46b-86(b) of the Connecticut General Statutes permits a termination, suspension or reduction of alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the change because the living arrangements cause such a change of circumstances as to alter the financial needs of that party.
In interpreting the language of the statute, the Supreme Court, in Kaplan v. Kaplan, 185 Conn. 42, 45 (1981), found the language "living with another person" to be broader than the definition of "cohabitation".
Kaplan I and Kaplan v. Kaplan II, 186 Conn. 387 (1982), are the leading cases defining the grounds for termination of alimony pursuant to Section 46b-86(b). These two cases held that the statute requires the party moving for modification to show that the party receiving alimony is living with another person and that this living arrangement has caused a "change of "circumstances" which alters the financial needs of the party receiving alimony. Kaplan v. Kaplan I, 185 Conn. at 45; Kaplan v. Kaplan II, 186 Conn. at 389.
The court heard testimony from the defendant, Jodi Mucherino, and her former boyfriend, Gary Drury, on the issue of cohabitation.
This couple met in February, 1989 at the Laurel Diner, where the defendant works as a waitress. Sometime in March or early April of 1989, Mr. Drury moved into Mrs. Mucherino's home on Osage Circle in Watertown. He moved a substantial number of his personal items in with him, including furniture. The couple engaged in marital relations and shared a bedroom. At some point in late March, the defendant became pregnant, allegedly by Mr. Drury. (The issue is now the subject of a disputed paternity proceeding.) The two discussed marriage and actually set a date — August 12, 1989.
However, during the last week of June, the defendant asked Mr. Drury to move out, and he complied. She testified that she decided that he was not ready to commit himself to marriage and fatherhood. CT Page 1739
During the short period Mr. Drury lived with the defendant, he testified that he once gave her $350.00 in an envelope. He also recalled giving her $75.00 "one night in April" and $200.00 sometime in May. He stated this money was to help her pay bills. Once in a while he brought home groceries. About every three weeks, they would go out to dinner and he would pay.
Jodi Mucherino testified that the only reason Mr. Drury ever gave her any money was to repay her for money she loaned him to establish his own business as a carpenter. Since his moving out and the birth of her second child, the defendant has had no financial contribution from Mr. Drury.
Even if the court totally discounts the defendant's characterization of the monies paid to her by Mr. Drury, there is insufficient evidence to warrant a termination of alimony under the statute. Mr. Drury's brief presence in the defendant's household for three or four months in the spring of 1989 caused no alteration in her financial circumstances. The total amount of money Mr. Drury remembers giving her, $625.00, barely exceeds the cost of her living expenses for one week. As the defendant points out in her brief, if anything, he may have only created more financial hardship for her.
The facts in this case do not come anywhere near the extended relationship found insufficient as grounds for termination in the Kaplan cases or the relationship found sufficient in Lupien v. Lupien, 192 Conn. 443, 444 (1984).
The plaintiff has failed to prove cohabitation in accordance with C.G.S. Section 46b-86(b). His motion for modification as it pertains to a request for termination of the $12.50 per week alimony award is therefore denied.
The final issue which needs to be addressed is the defendant's motion for contempt dated July 16, 1990.
Since June 8, 1990, when the defendant agreed to a schedule of payments to reduce a sizeable arrearage of nearly two years in missed contributions, he has missed an additional fifteen weeks in alimony payments and payments on the arrearage. However, as of August 10, 1990, he had remained current in the $55.00 per week child support order. Had the court not entered a stay on the alimony and arrearage orders, he should have paid the defendant an additional $675.00 since June 8, 1990.
The court is not going to enter a finding of contempt due to the fact that the amount of the arrearage was originally found subject to adjustment and credit and both parties knew the CT Page 1740 plaintiff was going to procure counsel to challenge the amount on the basis of cohabitation. While it is not entirely excusable that the plaintiff withheld sums because he was counting on a reduction in the arrearage, or a reduction in the amount he had agreed to pay on the arrearage, I do not find his conduct to be a willful violation of the court orders.
Now that all issues have been decided, however, an arrearage can be found in the amount of $8,292.50 as of August 10, 1990 and the plaintiff must make some payment toward weekly sums he has missed since his June 8 agreement.
Effective September 28, 1990, the payments on the alimony and the arrearage are reinstated. The total order of $55.00 per week current support, $12.50 per week alimony and $32.50 on the arrearage — $100.00 — is to be secured by an immediate wage withholding. Payments are to continue to be paid through the Support Enforcement Division. In addition, the plaintiff is ordered to make a $500.00 lump sum payment on or before December 17, 1990 to be applied to the petitioner's arrearage.
The matter is continued to December 17, 1990 to monitor compliance with this order.
Christine E. Keller Family Support Magistrate