STATE OF CONNECTICUT *v.* STANLEY T. VALINSKI
(AC 17466)

O'Connell, C J., and Landau and Daly, Js.

Argued November 30, 1998—officially released April 28, 1999*

* April 28, 1999, the date that this decision was rereleased as a slip opinion, is the operative date for all substantive and procedural purposes.

*Robert J. McKay*, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom were *Dawn Gallo*, deputy assistant state's attorney, and, on the brief, *Andrew M. Wittstein*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Stanley T. Valinski, appeals from the judgment of conviction, rendered after

a trial in part to the court and in part to the jury,[1] of operating a motor vehicle while his license was under suspension in violation of General Statutes (Rev. to 1995) § 14-215 (c),[2] failure to drive on the right in violation of General Statutes § 14-230 (a) and operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a.[3]

The defendant was charged in a two part information. In part B of the information, the state alleged that the defendant was subject to an enhanced penalty based on a previous conviction for operating a motor vehicle while under the influence of liquor. Thereafter, the defendant pleaded nolo contendere to part B of the information. On appeal, the defendant claims that (1) as a matter of law, § 14-215 is inapplicable to the facts of this case, (2) the state's evidence was insufficient to sustain a guilty verdict, (3) the state engaged in prosecutorial misconduct by misrepresenting to the jury that it would call a certain witness and (4) the trial court's unchallenged instructions were misleading and confusing.[4] We reverse the judgment of the trial court in part.

[1] The case was tried to a jury except for the count alleging a violation of General Statutes § 14-230 (a).

[2] General Statutes (Rev. to 1995) § 14-215 (c) provides in relevant part: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension . . . on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

[3] Because the defendant has failed to brief the issue of why the judgment of conviction under §§ 14-230 (a) and 14-227a should be reversed, it is deemed to be abandoned. See *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 550 n.2, 717 A.2d 850, cert. denied, 247 Conn. 940, 941, 723 A.2d 318 (1998). The only conviction at issue in this appeal, therefore, is the defendant's conviction under § 14-215 (c).

[4] In his second claim, the defendant claims that the state's evidence was insufficient to sustain the jury's guilty verdict. Specifically, the defendant

The jury reasonably could have found the following facts. The parties stipulated that on December 15, 1994, the defendant was convicted of operating a motor vehicle while under the influence of liquor or drugs in violation of § 14-227a (a).[5] As a result of the conviction, the department of motor vehicles (department) suspended the defendant's operating privileges on January 13, 1995.[6] On January 14, 1995, the department issued a work permit to the defendant.[7]

claims that the evidence in this case proved by a preponderance of the evidence that the defendant operated a motor vehicle within the scope of a work permit. The defendant claims that by finding him guilty, the jury failed to follow the court's charge that it could find him not guilty if he proved by a preponderance of the evidence that he operated a motor vehicle within the scope of a work permit. In other words, although the claim is couched as a sufficiency challenge, actually, the defendant's claim is that the jury inappropriately chose to disbelieve certain testimony concerning the work permit. In light of our reversal of the judgment in part II of this opinion on the basis that the trial court improperly instructed the jury as to the defendant's burden of proof, we need not address this claim as we cannot determine whether it will likely occur on retrial.

The defendant claims in his third claim that prosecutorial misconduct deprived him of a fair trial, namely, his right to an impartial jury, in violation of the due process clause of article first, § 8, of the constitution of Connecticut. Specifically, the defendant's prosecutorial misconduct claim is that the state's "knowing use of misleading testimony may violate due process," as the state misrepresented to the jury that it would call a certain witness. We note that the defendant refers to the statement that the prosecutor made to the jury as testimony. The prosecutor, however, did not offer this statement in the form of testimony. It is well settled that statements made by counsel are not evidence. *State* v. *Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993). As noted, because we reverse the judgment on the basis of the defendant's fourth claim, we need not address this claim as it is not clear that it will arise again upon retrial.

[5] The parties also stipulated that this predicate conviction was an element of the offense of § 14-215 (c).

[6] Terry Zietler, a department employee who decides whether to accept applications for a special permit to operate a motor vehicle to and from work, testified that the defendant's right to operate was suspended on January 13, 1995. The suspension notice sent to the defendant on January 3, 1995, however, indicates that "[e]ffective January 14, 1995, [the defendant's] Connecticut driver's license [was] suspended."

[7] The record indicates that with respect to a separate incident unconnected to this appeal, the defendant, a self-employed advertising agent, applied for

On Saturday, May 13, 1995, State Trooper Kevin Albanese stopped the defendant's vehicle on Route 44 in Canaan after twice observing it swerve in and out of the oncoming lane and nearly strike a guardrail post after it drifted over the white shoulder line. While waiting for the defendant's license and registration, Albanese asked the defendant where he had been. The defendant replied that he was returning from a fishing trip with his dog. After Albanese reviewed the work permit that the defendant handed him and noticed the restrictions on the permit, he again inquired of the defendant where he had been. This time, the defendant replied that he was returning from a fishing trip with several business associates, but, when asked, was unable to supply their names.

After receiving the defendant's information, Albanese contacted Troop B in North Canaan and confirmed that the defendant's right to operate a motor vehicle was under suspension. Albanese detected a strong odor of alcohol and noticed that the defendant's eyes were red and glassy. On the basis of the defendant's erratic driving, the strong odor of alcohol and the appearance of the defendant's eyes, Albanese believed that the defendant was operating while under the influence of alcohol. After administering three field sobriety tests, Albanese confirmed his belief.[8] Thereafter, Albanese arrested the

a work permit on September 7, 1994, which was valid until December 13, 1994. In a letter dated January 9, 1995, the defendant requested an extension of the 1994 work permit. Thereafter, the defendant's work permit was extended until January 14, 1996. In the permit application, and again in his letter dated January 9, 1995, the defendant indicated that he needed the permit only to drive to meet with clients and to shoot, record and edit radio and television commercials.

[8] The prosecutor conducted the following examination of Albanese:

"Q. What did [the result of the third field sobriety test] indicate?

"A. There was another building block with the priors that the person was operating under the influence.

"Q. Now, based upon your experience and training and what you had just seen the defendant do, you are talking with him and you are following him in your car, did you form an opinion as to the state of sobriety?

defendant and transported him to Troop B, where the defendant refused to submit to any further testing.

Following a jury trial, a verdict of guilty was returned on the three noninfraction counts: two counts of operating a motor vehicle while his license was under suspension and one count of operating a motor vehicle while under the influence of intoxicating liquor. On the charge of failure to drive on the right, the court made a finding of guilty.[9] On June 5, 1997, the trial court denied the defendant's motion to dismiss and his motion for a mistrial. On June 6, 1997, the trial court denied the defendant's amended motion for judgment of acquittal at the close of evidence. Thereafter, on June 25, 1997, the trial court granted the defendant's motion to set aside the verdict on one count of operating a motor vehicle while his license was under suspension and denied the defendant's motions for judgment of acquittal on the remaining charges and for new trial. This appeal followed. Other facts will be discussed where relevant to the issues in this appeal.

I

Initially, we address the defendant's numerous claims challenging the state's authority to charge him with a violation of § 14-215, operating a motor vehicle while his license was under suspension.[10] Essentially, the substance of the question he raises in these claims is

---

"A. Yes.

"Q. And what was that opinion?

"A. I believe he was operating under the influence."

[9] Thereafter, the trial court sentenced the defendant on the operating under suspension charge to one year, execution suspended after the mandatory minimum thirty days to serve, with two years probation, and, on the operating under the influence charge, to one year, execution suspended after the mandatory minimum ten days to serve, consecutive to the second count, with two years probation.

[10] Because similar arguments are raised as to each claim, we treat them together. Specifically, the defendant's claims regarding the denial of his motion to dismiss, motion for a mistrial, motion for judgment of acquittal

whether, as a matter of law, § 14-215 is applicable to the facts of this case. The state responds that on the basis of the plain language and the legislative intent behind the enactment of § 14-215, there is no merit to the defendant's claim that he was exempt from prosecution under § 14-215 simply because he possessed a special operator's permit pursuant to General Statutes § 14-37a. We agree with the state.

Because this is an issue of first impression, which raises a question of law requiring our construction of § 14-215, our analysis is governed by well established principles of statutory construction. Accordingly, our review is plenary. See *State* v. *Swain*, 245 Conn. 442, 451, 718 A.2d 1 (1998).

" 'Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative

and motion for a new trial present similar arguments, which raise a question of law involving the interpretation of § 14-215. The defendant claims that the state's evidence proved that, although the defendant's license was under suspension, he had a work permit that allowed him to operate a motor vehicle. Furthermore, the defendant claims that § 14-215 neither mentions a work permit nor provides for a violation where a motorist is found to have operated a motor vehicle outside the scope of a work permit. The defendant claims that the only authority in this state governing the improper use of a work permit is found in General Statutes § 14-37a. Accordingly, the defendant asserts that the state lacked the legal authority to prosecute him under § 14-215 and he, therefore, should have been acquitted of the charges brought against him under § 14-215.

The defendant also asserts as part of his prosecutorial misconduct claim; see part III; that the prosecutor engaged in misconduct by charging the defendant with an unsubstantiated count of operating a motor vehicle while his license was under suspension, which the prosecutor knew was improper. Essentially, the defendant claims that, because the prosecutor was aware that the defendant possessed a work permit and that no authority in this state allows the prosecution of a permit holder under § 14-215, charging the defendant with a violation of operating a motor vehicle while his license was under suspension under § 14-215 was equivalent to charging the defendant falsely.

policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " *Edelstein* v. *Dept. of Public Health & Addiction Services*, 240 Conn. 658, 664, 692 A.2d 803 (1997). Furthermore, "principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Citations omitted.) *Turner* v. *Turner*, 219 Conn. 703, 712–13, 595 A.2d 297 (1991). " 'Where the legislative intent is clear there is no room for statutory construction.' " *Kelemen* v. *Rimrock Corp.*, 207 Conn. 599, 606, 542 A.2d 720 (1988). A primary rule of statutory construction is that "when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987).

General Statutes (Rev. to 1995) § 14-215 (c) provides in relevant part that "[a]ny person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension . . . on account of a violation of subsection (a) of section 14-227a . . . shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner." We conclude that the language of § 14-215 (c) is plain and unambiguous and, accordingly, resort to legislative history is unnecessary. See *State* v. *Lubus*, 216 Conn. 402, 407, 581 A.2d 1045 (1990).

The plain meaning of § 14-215 conveys a clear intention to provide the state with the legal authority to prosecute *any* person who operates a motor vehicle

outside the scope of the work permit while his or her license is under suspension. Accordingly, we also conclude that the trial court did not improperly deny the defendant's motions and the prosecutor did not improperly charge the defendant.[11]

## II

The defendant claims that the trial court's instructions were misleading and confusing. Specifically, the defendant claims that the constitutionally deficient instructions in this case violated his due process rights under the state and federal constitutions.[12] The defendant concedes that this claim is unpreserved but maintains that it is reviewable pursuant to *State* v. *Evans*,

[11] Furthermore, another principle of statutory construction requires that a statute that imposes criminal liability should be strictly construed and that ordinarily ambiguities should be resolved in favor of the defendant. *State* v. *Harrell*, 238 Conn. 828, 832, 681 A.2d 944 (1996). As we have stated, § 14-215 is unambiguous. The doctrine of strict construction, however, "is only one of the aids which is to be used in the construction of penal statutes. . . . Other aids include such things as the statutory language itself, legislative history where available, the furthering of the policy and purposes fairly apparent from the statute which include the mischief sought to be proscribed and related statutes." (Citation omitted.) *Singh* v. *Singh*, 213 Conn. 637, 646–47, 569 A.2d 1112 (1990). Our conclusion is supported by a review of the legislative history of § 14-215, which indicates that our "legislature . . . promulgated an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers. . . . The legislature enacted the statutes governing the operation of motor vehicles . . . for the protection of the lives and property of the citizens of this state." (Citations omitted; internal quotation marks omitted.) *State* v. *Swain*, supra, 245 Conn. 456.

Considering that policy, the legislature could not have meant § 14-215 to apply to all motorists *except* those driving with a valid work permit, thereby implying that a permit holder operating a motor vehicle for an unauthorized purpose is less dangerous than any other motorist operating a motor vehicle while his license was under suspension on account of operating while under the influence of intoxicating liquor. In this case, the defendant operated his motor vehicle outside the scope of his permit and did so while under the influence of alcohol. Were we to construe the statute as the defendant suggests, we would defeat the purpose of the legislature by reading into the statute an exemption that is not clearly stated and creating an absurd result.

[12] The defendant invokes his due process rights under both the fifth and fourteenth amendments to the United States constitution and article first,

165 Conn. 61, 327 A.2d 576 (1973), *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[13] and Practice Book § 60-5.[14]

We will review the claim under *Golding* because the record is adequate for review and the defendant alleges the violation of a fundamental right to due process. See *State* v. *Delgado*, 50 Conn. App. 159, 170, 718 A.2d 437 (1998); see also *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994) (claim that jury instructions diminish state's burden of proof constitutional in nature). Having satisfied the first and second requirements of *Golding*, we

§ 8, of the Connecticut constitution. We note that the defendant, however, "does not claim . . . that he is entitled to any greater protection under the due process clause of the state constitution than he is under the analogous provision of the federal constitution. For purposes of this appeal, therefore, we treat the state and federal due process clauses as embodying the same level of protection." *State* v. *Austin*, 244 Conn. 226, 237 n.11, 710 A.2d 732 (1998).

The defendant also claims that the instructions violated his right to a jury trial, to an impartial jury trial, under both the sixth and fourteenth amendments to the United States constitution and article first, §§ 8, 19, of the Connecticut constitution. Because the defendant has failed to brief how the instructions violated his right to a jury trial, or to an impartial jury trial, we decline to review the claim as it is deemed to be abandoned. See *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 550 n.2, 717 A.2d 850, cert. denied, 247 Conn. 940, 941, 723 A.2d 318 (1998).

[13] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citations omitted; internal quotation marks omitted.) *State* v. *Otero*, 49 Conn. App. 459, 463 n.6, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998).

[14] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

must consider whether the defendant has satisfied the third requirement of *Golding*. We conclude that the claim fails because the alleged constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial.

The following additional facts and procedural history are necessary for the resolution of this issue. In its charge, the trial court instructed the jury on the law governing the case and its application during deliberations. The court first instructed the jury regarding the state's burden of proving guilt beyond a reasonable doubt.[15] Thereafter, the court instructed on the specific

---

[15] The trial court instructed the jury as follows: "Now in this case, as in all criminal prosecutions, the defendant is presumed to be innocent until proven guilty. Now, he must be proven guilty beyond a reasonable doubt. Now, this presumption of innocence was with this defendant when he was first presented for trial in this case. It continues with him throughout the trial unless and until such time as all of the evidence produced here . . . satisfies you beyond a reasonable doubt that he is guilty. Now, the burden to prove the defendant guilty of the crime of which he is charged is upon the state. The defendant does not have to prove his innocence. This means that the state must prove, beyond a reasonable doubt, each and every element necessary to constitute the crime charged.

"Whether the burden of proof resting upon the state is sustained depends not on the number of witnesses nor on the quantity of the testimony, but on the nature and quality of the testimony. Please bear in mind, that one witness' testimony is sufficient to convict if it establishes all of the elements of the crime beyond a reasonable doubt.

"Now, the meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, it is not a guess, or mere conjecture. Nor is it doubt suggested by ingenuity of counsel or of a juror not warranted by the evidence. It is such a doubt as, in serious affairs that concern you, you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act on it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused or any other person who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is doubt that is honestly entertained and reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence in the case. Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that, after hearing all of the evidence, if there is something in the evidence or

charges against the defendant.[16] Following the instruction on the charge of operating a motor vehicle while under the influence of intoxicating liquor, the court instructed the jury on direct and circumstantial evidence and that the cumulative effect of reliance on either type of evidence must be the conclusion that the elements were proven beyond a reasonable doubt. Immediately thereafter, the court instructed the jury regarding the scope of the work permit and the defendant's burden of proving by a preponderance of the evidence that he was operating a motor vehicle within that scope.[17]

lack of evidence that leaves in the minds of the jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of the doubt and must be acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

[16] The trial court first instructed the jury on the charge of operating a motor vehicle while one's license is under suspension and then on the charge of operating a motor vehicle while under the influence of intoxicating liquor. The trial court charged the jury on the former as follows: "[The defendant] is also charged with operating under suspension in two counts. And I will bring to your attention the fact that there is a stipulation of the parties relative to that offense. In addition, there has been evidence offered to you concerning the element of that operating under suspension, and I will instruct you that a person commits the crime of operating under suspension when he operates a motor vehicle on a public highway when his right or privilege to operate has been suspended. Now, in one of those counts there is the claim that the defendant was operating under suspension when his license was suspended for a conviction of a violation of . . . § 14-227a. There is a stipulation for you to consider on that is marked as court exhibit one and it relates directly to those facts, those elements."

[17] The trial court instructed the jury as follows: "Now, ladies and gentlemen, in this case, there was submitted to you, and will be submitted to you by way of a document and by way of testimony, that at the time and place alleged in the information, that is, in May of 1995, the defendant was operating under a [work] permit. Now, [a work permit] issued in accordance with § 14-37a . . . permits a person to operate a motor vehicle to and from his place of employment or if he's not employed at a specific or fixed location, to operate a motor vehicle in connection with, and to the extent necessary, to perform his business or profession. Now, if you find by a preponderance of the evidence that the defendant was operating his motor

Later in the charge, the court repeated that "the state must prove beyond a reasonable doubt that the defendant was under the influence of intoxicating liquor while operating the motor vehicle" and "it has been the obligation of the state to prove all of the elements charged against the defendant beyond a reasonable doubt."

" 'At the outset, we note that under . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present.' " *State* v. *Delgado*, supra, 50 Conn. App. 171.

Thus, we consider whether the trial court's instructions were improper in light of the entire charge. The

---

vehicle within the context of a [work] permit, you may find the defendant not guilty. Now, proof by a preponderance of the evidence means, considering all of the evidence fairly and impartially, enough evidence as produces in your mind a reasonable belief that is sought to be proven is more likely true than not true. This means you take all the evidence offered on this issue by both the defendant and state, you weigh it and balance it. If the better and weightier evidence inclines in the defendant's favor, then he has sustained his burden in proving that defense by a preponderance of the evidence."

defendant claims that trial court improperly instructed the jury that the defendant must prove by a fair preponderance of the evidence that he was operating a motor vehicle within the scope of his work permit. Specifically, the defendant claims that requiring a jury to apply this standard of proof violates the constitutionally required principles that a defendant is presumed innocent and bears no burden of proof while the state bears the burden of persuading the jury of guilt beyond a reasonable doubt. We agree that the instruction was improper and reverse the judgment of the trial court.[18]

We first address the defendant's claim that the trial court's improper jury instructions undermined the constitutional principle of presumption of innocence. We disagree.

We are guided in the resolution of this claim by *State v. Coleman*, 14 Conn. App. 657, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988). In *Coleman*, the court noted that "the presumption of innocence and the state's burden of proving guilt beyond a reasonable

---

[18] The defendant also claims that the trial court's failure to instruct the jury regarding whether the defendant's stipulation that he was convicted in December, 1994, of a violation of § 14-227a (a) was intended to apply to the charge of operating a motor vehicle while his license was under suspension in violation of § 14-215 (a) or (c), and that they had the option to return a guilty verdict on either charge, misled the jurors to believe that they had no choice but to find the defendant guilty of both. Because we reverse the judgment, and the charge of operating a motor vehicle while his license was under suspension in violation of § 14-215 (a) was dismissed, we need not address this claim.

In addition, the defendant claims that the trial court improperly instructed the jury regarding the defendant's burden of proof immediately following the charge of operating a motor vehicle while under the influence of intoxicating liquor rather than after the charges of operating a motor vehicle while his license was under suspension and, as such, the jury was misled by the burden placed on the defendant, resulting in a dilution of the state's burden of proof. In light of our reversal of the judgment on the basis of the defendant's claim that the jury was not properly instructed as to the defendant's burden of proof, we need not address this claim because it is not clear that it will arise again.

doubt are 'logically similar.' [*Taylor* v. *Kentucky*, 436 U.S. 478, 484, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).] [The *Taylor*] court stated that the presumption of innocence 'is not evidence—not even an inference drawn from a fact in evidence—but instead is a way of describing the prosecution's duty both to produce evidence of guilt and to convince the jury beyond a reasonable doubt.' Id., 483–84 n.12. . . .

"In *Taylor*, the court defined the principal function of the presumption of innocence: It is aimed to ensure that the jury bases its decision solely on the evidence presented, and not on extraneous factors such as arrest, information, arraignment, custody and the status of the defendant as an accused. *Taylor* v. *Kentucky*, supra, [436 U.S. 484–86]. . . . The effect of an instruction on the presumption of innocence 'simply represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial.' [Id., 486]." (Citations omitted.) *State* v. *Coleman*, supra, 14 Conn. App. 669–70.

A review of the instructions in this case reveals that the trial court explicitly instructed the jury that it could not decide the case on the basis of factors other than the evidence produced at trial. Specifically, the trial court instructed the jury that it could not decide the case on factors such as the arrest, the information or the defendant's status as the accused. "The jury are presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Teti*, 50 Conn. App. 34, 45, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998). There is no indication in the present case that this jury did not follow the court's directions as to the presumption of innocence standard. As such, the trial court's charge to the jury had nothing to do with the presumption of innocence principle and, therefore, did

not undermine that principle and mislead the jury. See *State* v. *Coleman*, supra, 14 Conn. App. 670.

We turn next to the defendant's claim that the trial court's improper jury instructions impermissibly diluted the state's burden of proving the defendant's guilt beyond a reasonable doubt and impermissibly placed the burden of proof on him. We agree.

"It is fundamental that any person accused of a crime is presumed innocent unless and until the state has proven his guilt by establishing each essential element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) . . . . The reasonable doubt standard provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. [Id., 363.] The requirement of proof beyond a reasonable doubt protects the fundamental value determination of our society, given voice in Justice Harlan's concurrence in *Winship*, that it is far worse to convict an innocent man than to let a guilty man go free." (Citations omitted; internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 512, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997); see also *State* v. *DelVecchio*, 191 Conn. 412, 420, 464 A.2d 813 (1983) (trial court's charge on reasonable doubt standard must be clear and unequivocal). "The standard of proof beyond a reasonable doubt refers to the degree of certainty that the evidence produces in the minds of the jurors." *State* v. *Coleman*, supra, 14 Conn. App. 671.

"Furthermore, it is well established that [a]n instruction that dilutes the state's burden, or places a burden on the defendant to prove his innocence, is unconstitutional. *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct., 2450, 61 L. Ed. 2d 39 (1979)." (Internal quotation marks

omitted.) *State* v. *Taylor*, supra, 239 Conn. 512–13. "Where the defendant's contention is that the instructions on this standard diluted or impaired the constitutional requirement of proof of guilt beyond a reasonable doubt that contention must be examined 'with the greatest care and concern.' " *State* v. *DelVecchio*, supra, 191 Conn. 420.

The state argues that "the defendant's claim is in the nature of an exception or an exemption, and the trial court correctly placed the burden on the defendant to prove his defense by a preponderance of the evidence." In support of this argument, the state contends that "[i]t is the general rule that where exceptions to a prohibition in a criminal statute are situated separately from the enacting clause, the exceptions are to be proven by the defense." *State* v. *Tinsley*, 181 Conn. 388, 402, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981). The state's reliance on *Tinsley*, however, is misplaced. *Tinsley* involved a discussion of General Statutes § 29-35, which states the elements necessary to prove the crime charged and, in a separate clause, sets forth exceptions to a violation of the statute. Section 14-215, however, does not include exceptions to its violation.

The state also relies on *State* v. *Arroyo*, 181 Conn. 426, 435 A.2d 967 (1980). In *Arroyo*, our Supreme Court stated that "[i]t is constitutionally permissible for the state to place the burden on a criminal defendant to prove by a preponderance of the evidence elements which would constitute an affirmative defense but which do not serve to negate any essential element of the crime which the state has the burden of proving beyond a reasonable doubt in order to convict." Id., 430. Furthermore, the state argues that "[t]he federal due process clause does not bar *state legislatures* from placing the burden on a defendant to prove an affirmative defense or to prove that he or she falls within

an exemption to liability for an offense." (Emphasis added.) *State* v. *Hart*, 221 Conn. 595, 611, 605 A.2d 1366 (1992).

The state's reliance on *Arroyo* and *Hart*, however, is also misplaced. *Arroyo* concerns General Statutes § 53a-67 (b), which *explicitly* states that in a prosecution for an offense under this statute, it is an affirmative defense that the parties were living together by mutual consent in a relationship of cohabitation. Similarly, *Hart* is concerned with the language of General Statutes § 21a-269, which places the burden of persuading the jury by a preponderance of the evidence on a defendant invoking the exemption set forth in General Statutes § 21a-278 (b). In the present case, the state legislature has not included language within § 14-215 that indicates that a work permit issued pursuant to § 14-37a is an affirmative defense to a violation of § 14-215, thereby placing the burden on the defendant to prove that he was operating a motor vehicle within the scope of a work permit.

"A defendant has the burden of persuasion only when it is *declared to be an affirmative defense* in the statute, in which case he must establish such defense only by a preponderance of the evidence. [General Statutes] § 53a-12 (b)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.5.3 (g), p. 83. "As to such an independent fact [sanity], as with regard to other affirmative defenses, the *legislature* has the constitutional authority to allocate the burden of proof to the defendant rather than to the state." (Emphasis added; internal quotation marks omitted.) *State* v. *Cole*, 50 Conn. App. 312, 319–20, 718 A.2d 457, cert. granted on other grounds, 247 Conn. 937, 722 A.2d 1217 (1998), quoting *State* v. *Joyner*, 225 Conn. 450, 464–65, 625 A.2d 791 (1993). Our review of existing affirmative defenses fails to reveal any affirmative defense created by our legislature that relates to a work permit issued pursuant to

§ 14-37a. It is the prerogative of the legislature, not the courts, to establish affirmative defenses. See *State* v. *Hart,* supra, 221 Conn. 611; *State* v. *Cole,* supra, 319–20. Accordingly, the challenged language in the trial court's charge improperly shifted the burden of proof to the defendant on the issue of whether he operated a motor vehicle within the scope of a work permit.[19] The charge, therefore, violated the principles set forth in *Sandstrom* v. *Montana,* supra, 442 U.S. 510, and *In re Winship,* supra, 397 U.S. 358.

This determination, however, "does not end the inquiry because such an error is harmless if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."[20] (Internal quotation marks omitted.) *State* v. *Faust,* 237 Conn. 454, 470, 678 A.2d 910 (1996); *State* v. *Cerilli,* 222 Conn. 556, 584, 610 A.2d 1130 (1992).

In the present case, the trial court instructed the jury that it could find the defendant not guilty if it found that the defendant *"sustained his burden in proving* that [he was operating his motor vehicle within the scope of a work permit] by a preponderance of the

[19] We note that the state must prove "beyond a reasonable doubt . . . all the elements of the crime and the defendant's participation or responsibility, but *not* . . . each evidentiary fact. . . . It is only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Rodgers,* 198 Conn. 53, 58 n.1, 502 A.2d 360 (1985); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.4.2, p.75.

[20] "We have equated this constitutionally required formulation of the harmless error standard; see *State* v. *Coleman,* [supra, 14 Conn. App. 678–81]; with our formulation that an instructional constitutional error is harmless if there is no reasonable possibility that the jury was misled. See *State* v. *Mercer,* [208 Conn. 52, 73–74, 544 A.2d 611 (1988)]. We perceive no functional difference between the two formulations." (Internal quotation marks omitted.) *State* v. *Faust,* 237 Conn. 454, 470 n.18, 678 A.2d 910 (1996).

evidence."[21] (Emphasis added.) Later in its charge, the trial court repeated the instruction that the state had the burden of proving each element of the crime charged beyond a reasonable doubt. While we are aware that a charge to the jury is to be read as a whole and that individual instructions are not to be evaluated in isolation from the overall charge; *State* v. *Delgado*, supra, 50 Conn. App. 171; we conclude that under the facts of this case, the concept of reasonable doubt, that degree of certainty that we require in the minds of the jurors, was not properly before the jury because of the flawed instruction. The trial court's instruction on the defendant's burden of proof effectively reduced the state's burden of proving each element of the crime beyond a reasonable doubt. See *State* v. *DelVecchio*, supra, 191 Conn. 424–25.

On the basis of our review of the record before us, we conclude that in discussing the critical subject of burden of proof, the trial court's incorrect instruction misled the jury. See *State* v. *Rodgers*, 198 Conn. 53, 58–59, 502 A.2d 360 (1985). Accordingly, we cannot conclude that the instructional error was harmless beyond a reasonable doubt.

The judgment is reversed only as to the defendant's conviction of operating a motor vehicle while his license was under suspension and the case is remanded for a new trial on that charge.

In this opinion the other judges concurred.