## STATE OF CONNECTICUT *v.* HARRY RODRIGUEZ
### (AC 16218)

O'Connell, C. J., and Schaller and Healey, Js.

Argued April 29—officially released August 4, 1998

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Harry Rodriguez, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the trial court improperly (1) instructed one panel of venirepersons in its preliminary remarks concerning the presumption of innocence and (2) instructed the jury concerning the finding of an affirmative fact from its denial by a witness.[1] We affirm the judgment of the trial court.

---

[1] The defendant also claims that the trial court improperly convicted him of commission of a class A, B or C felony with a firearm under General Statutes § 53-202k. The defendant argues that § 53-202k constitutes a sentence enhancement provision rather than a separate offense and that he should not have been convicted under this provision. The state conceded that this claim is correct. *State* v. *Dash*, 242 Conn. 143, 146, 698 A.2d 297 (1997); *State* v. *Williams*, 48 Conn. App. 361, 373, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998). At oral argument, both parties agreed that the defendant has already been resentenced by the trial court. This issue is moot, and we need not address it further.

The jury reasonably could have found the following facts. On April 21, 1995, Colleen Bachard, the victim, visited the defendant at his house on Stillman Street in Bridgeport. Bachard and the defendant began to argue when she noticed "hickeys" on the defendant's neck. Bachard left the defendant's house and subsequently joined the defendant's sister, Maria Perez, and Perez' friend, Christina Santiago. Bachard then walked to the corner of Berkshire and East Main Streets accompanied by the two women. Bachard testified that she was going to the corner to meet a woman named Melissa, whom she suspected was responsible for the hickeys on the defendant's neck.

While the women were waiting on the street corner, the defendant rode up on a bicycle. The defendant and Bachard began arguing again. The argument escalated and Bachard and the defendant began to exchange blows. While Bachard and the defendant were fighting, a friend of Bachard's, Carlos Diaz, and his passenger, Brian Puffen, drove by in Diaz' car. Seeing the altercation, Diaz turned his car around and came back. As Bachard began to walk into the street, signaling to Diaz, the defendant shouted that if she kept on walking he was going to shoot her. Immediately thereafter, four shots were fired. Bachard fell to the ground, bleeding from a bullet wound to her neck. Several police officers responded to the scene almost immediately. By the time the police arrived, however, the defendant had fled on his bicycle. Bachard was taken to a hospital, where she was treated and released nine days later.

The state charged the defendant with attempted murder in violation of General Statutes § § 53a-54a and 53a-49,[2] assault in the first degree in violation of § 53a-59

---

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

(a) (1),[3] commission of a class A, B or C felony with a firearm in violation of § 53-202k[4] and carrying a pistol without a permit in violation of § 29-35 (a).[5] At trial, the defendant alleged that he had been shooting at Diaz in self-defense and struck Bachard by mistake. To support his self-defense claim, the defendant presented testimony of his sister, Perez, that after Diaz parked the car he got out and shot at least two times over the hood of the car at the defendant before the defendant returned fire. In addition, the defendant presented expert testimony showing that gunshot residue was found in various locations on the interior of Diaz' car.

On March 13, 1996, the jury found the defendant not guilty of the crime of attempted murder, but guilty of the crime of assault in the first degree. The jury also found the defendant guilty of carrying a pistol without

General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[5] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

a permit and commission of a class A, B or C felony with a firearm. The trial court sentenced the defendant to twenty years imprisonment, suspended after fifteen years, and five years probation on the charge of assault in the first degree, five years imprisonment to run consecutively on the charge of commission of a felony with a firearm and five years imprisonment to run concurrently on the charge of carrying a pistol without a permit.[6] This appeal followed.

I

The defendant first claims that the trial court improperly instructed a panel of potential jurors concerning the presumption of innocence. Specifically, the defendant claims that the trial court, by one statement in its preliminary remarks to a panel of potential jurors, undermined the presumption of innocence and violated his constitutional rights to due process of law, to an impartial jury, to present a defense and to confront adverse witnesses.[7] We do not agree.

In its preliminary remarks, the trial court gave a brief overview of the component parts of the trial, instructed the potential jurors to keep an open mind throughout the trial and attempted to quell any fears they might

---

[6] The trial court subsequently resentenced the defendant; see footnote 1; to twenty years imprisonment suspended after fifteen years and five years probation on the charge of assault in the first degree; this sentence was enhanced by five years imprisonment on the charge of commission of a felony with a firearm, and five years imprisonment to run concurrently on the charge of carrying a pistol without a permit.

[7] The defendant claims a violation of article first, §§ 8 and 9, of the constitution of Connecticut with respect to the presumption of innocence. Because the defendant failed to provide an adequate basis for an independent analysis of the applicable state constitutional protections, we limit our review to the federal constitutional claim. *State* v. *Zarick*, 227 Conn. 207, 226 n.18, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); *State* v. *Santiago*, 224 Conn. 325, 328 n.4, 618 A.2d 32 (1992); *State* v. *Joly*, 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991); *State* v. *Jones*, 35 Conn. App. 839, 843 n.5, 647 A.2d 43 (1994).

have about being adequate for the task. The trial court also offered a preliminary explanation of the concept of the presumption of innocence.[8] Two members of this panel of venirepersons became jurors.

The defendant failed to raise this claim at trial and now seeks review under *State* v. *Golding,* 213 Conn.

[8] In explaining the concept of the presumption of innocence, the trial court instructed the panel of potential jurors in relevant part: "Now, the other concepts have to do with your view toward being here this morning. And you heard about the presumption of innocence, correct? You heard that mentioned by Judge Ronan, I presume. And it wasn't new to you. You've heard it before in your life. But now that you're in this room, you look around the room, you figure out who's who. I've already told you that he's the state's attorney. You figured out [that] I'm the judge. Mr. Abbamonte is representing the accused; he's seated to Mr. Abbamonte's left. His name is Harry W. Rodriguez. So let's focus on him, on the presumption of innocence.

"That is a presumption that everybody should maintain in their own mind. It is a requirement under the constitution. This accused and every other person in this country is entitled to it. And it means that the accused is presumed to be innocent and that presumption remains with him throughout the course of the trial. Until such time as the evidence produced in this courtroom, in the orderly process of this trial, satisfies you that he is guilty and no longer entitled to that presumption.

"So what does it mean to you now? It means the same thing to me. It means that this is a person merely charged with a crime on the say-so of somebody else. [He has] been arrested based on probable cause, the lowest level of proof, and only determined to know that *he has been determined by a magistrate of this court that the crime charged probably was committed and that the accused probably had something to do with it.* But that's on the say-so of others, you see. And these trials—the trial here in this courtroom is based on the burden of proof beyond all reasonable doubt, a much, much heavier burden. A much stronger picture has to be developed. By who? By others who gave information before who will be brought in here under oath and examined and cross-examined. Much different. Sometimes stories change.

"So focusing on the accused, is there something bothering you about the presumption? Does he look guilty? Is this something you can deal with? It's certainly not fair, is it? Must he have done something or he wouldn't be here? That oftentimes comes across the juror's mind. But that's suspicion, isn't it? Would you want to be treated that way? Convicted by suspicion alone. He's been accused, an accusation. Is that enough for you? Is that enough for our society? Of course not. What's wrong with affording him the presumption and waiting to see what the facts are? Because you know nothing about the case. Some of you would say, 'Well, judge, you're being

233, 567 A.2d 823 (1989),[9] or, alternatively, under the plain error doctrine. "A defendant may prevail under the third prong of *Golding* on a claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . Moreover, this court will reverse a judgment for plain error only in the truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 457, 680 A.2d 147 (1996). We conclude that the defendant cannot prevail under either of these standards.

"Preliminary instructions to prospective jurors in a criminal case are not mandatory. . . . When preliminary instructions are given, they do not supersede those

---

awfully presumptuous. You think that I've already made up my mind.' And of course you recognize that would be stupid, because you don't know anything about the case. Unless you have some private knowledge. And we'll ferret that out shortly.

"So those are the things that have to be—you have to be concerned with. That you remove from your mind any kind of suspicion, any basis of accusation; that you take care of any bias you might have, any prejudice you might have. If you can't do that, then you're obligated to tell us that. And if you have the ability to tell us that, be sure you have the ability to explain it." (Emphasis added.)

[9] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant [in] the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

given after evidence and arguments under our practice." (Citations omitted; internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 184, 665 A.2d 63 (1995). Analogous to those situations where a court attempts to clarify the phrase reasonable doubt, judicial attempts to clarify the meaning of the phrase presumption of innocence by explanation, elaboration or illustration may tend to confuse or mislead; however, such explanations do not necessarily constitute reversible error. *State* v. *Webb*, supra, 238 Conn. 457; *State* v. *Figueroa*, supra, 184; cf. *State* v. *DelVecchio*, 191 Conn. 412, 420, 464 A.2d 813 (1983). The question on appeal is whether the court's statements correctly conveyed the concept of presumption of innocence to the jury. " 'In determining whether preliminary jury instructions require reversal, we must ask whether the jury was fully and properly instructed at the critical time, after all the evidence and after the arguments of counsel.' " *State* v. *Webb*, supra, 457.

In its final instructions, the trial court informed the jury that "[i]n this case, as in all criminal cases, the accused is presumed to be innocent until he is proven guilty. That means that at the moment when he was presented here before you for trial, he is free from any bias, prejudice or burden arising from his position as the accused. He was then innocent and he remains innocent until such time as the evidence presented in the ordinary course of this trial, here in this courtroom, satisfies you that he is guilty." The trial court specifically told the jury, "You must not consider the information as evidence of guilt or draw any inference of guilt from the fact that the accused was—has been arrested and charged. The arrest is as consistent with innocence as it is with any other concept." The trial court also instructed the jury that the state has the burden of proving the guilt of the accused and that the accused does not have to prove his innocence. The trial court

explained that "[t]he law presumes a defendant to be innocent of the crime, thus, a defendant—although the accused begins the trial with a clean slate, with no evidence against him, and the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused." The trial court further instructed that "the presumption alone—of innocence—alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of his guilt after a careful and impartial consideration of all the evidence in the case." The trial court then went on to explain the concept of reasonable doubt.

Our review of the entire record in this case persuades us that the defendant was not prejudiced by the trial court's preliminary instruction that it "has been determined by a magistrate of this court that the crime charged probably was committed and that the accused probably had something to do with it." The jury was fully and correctly instructed as to the principles of the defendant's presumption of innocence and the state's burden of proof beyond a reasonable doubt at final instructions.[10] Therefore, the defendant was not deprived of his constitutional right to a fair trial and may not prevail under *State* v. *Golding*, supra, 213 Conn. 239–40, because he has not demonstrated that an error of constitutional magnitude clearly exists. *State* v. *Webb*, supra, 238 Conn. 458; *State* v. *Figueroa*, supra, 235 Conn. 184–85. Similarly, the trial court's preliminary instructions did not affect the fairness and integrity of and public confidence in the judicial proceedings and, therefore, did not constitute plain error. *State* v. *Webb*,

---

[10] The trial court's final instructions did not discuss the magistrate's determination in explaining the concept of presumption of innocence. The defendant does not claim on appeal that the trial court's final instructions were improper, nor did he seek a curative final instruction as to the preliminary instructions.

supra, 458; *State* v. *Figueroa*, supra, 185; *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988).

## II

The defendant next claims that the trial court improperly instructed the jury concerning the finding of an affirmative fact from its denial by a witness.[11] The defendant did not object to the instruction at trial, but now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40; see footnote 9; or, alternatively, under the plain error doctrine. The defendant acknowledges the well-settled rule that a jury is not permitted to infer, from its disbelief of a witness' testimony, that the opposite is true; *State* v. *Alfonso*, 195 Conn. 624, 634, 490 A.2d 75 (1985); *Anderson* v. *Anderson*, 191 Conn. 46, 56, 463 A.2d 578 (1983); *Novak* v. *Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979); *State* v. *Mayell*, 163 Conn. 419, 426–27, 311 A.2d 60 (1972); *State* v. *Coleman*, 14 Conn. App. 657, 671–72, 544 A.2d 194, cert. denied, 208 Conn.

---

[11] In explaining the difference between direct and circumstantial evidence, and the process of drawing inferences from facts the jury finds proven, the trial court instructed in relevant part: "The fact that there is antimony and barium and lead found inside a vehicle in and of itself and the manner of the testimony having to do with that, that is a condition, that is a circumstance, and whether or not you're to draw an inference that a gun was fired, depositing gunshot residue within the vehicle, you have to determine from everything you've heard on that. Is it reasonable and logical to draw such an inference? Is it reasonable and logical to draw any inference from which you can determine whether bullets were fired at the car or bullets were fired from within the car. You take all the circumstances, together with any other testimony bearing on those, and that would have to do with someone's testimony that the girl, Colleen [Bachard], saw nobody get out of the car. *And the boy* [Brian Puffen] *on the floor, after the shots were fired—if you believe him—he went down on the floor, he said that no one got out of the car. And when inquired, did they have a gun in the car, he said no. So you have to examine all of that. Whether you believe it's no is all right. You can accept or reject, but you can't find from that statement alone that the contrary is true. No.* Maria [Perez] says there was a gun in the car and that the driver was out firing across the hood of the car. So you put everything in perspective and determine what is reasonable and logical." (Emphasis added.)

815, 546 A.2d 283 (1988); yet argues that the rule is too broad and should apply only against the party bearing the burden of proof. Specifically, the defendant argues that the instruction violated his rights to due process of law, to present a defense and to confront adverse witnesses.[12] We are not persuaded.

The record before us is adequate to review the defendant's claim. The defendant, however, has failed to meet the second prong of the *Golding* test because his claim of instructional impropriety is not one of constitutional magnitude. " 'Just as every claim of evidentiary error by the trial court is not truly constitutional in nature; see, e.g., [*State* v. *Golding*, supra, 213 Conn. 241]; every claim of instructional error is not truly constitutional in nature. . . . Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right.' " (Citations omitted.) *State* v. *Dash*, 242 Conn. 143, 151–52, 698 A.2d 297 (1997).

It is axiomatic under Connecticut law that while a jury may reject a witness' testimony, a jury in rejecting such testimony is not entitled to conclude that the opposite is true. *State* v. *Alfonso*, supra, 195 Conn. 634; *Anderson* v. *Anderson*, supra, 191 Conn. 56. Because this rule is firmly rooted in Connecticut jurisprudence, we do not find fault with the trial court's instruction. In the absence of a showing that the instruction was

[12] The defendant argues that the instruction is improper because it effectively allows the state to establish an assertion solely through the jury's belief in its witness' testimony, while preventing the defendant from establishing a contrary assertion solely through the jury's disbelief in a witness' testimony. Because the rule applies equally to the state as well as to the defendant, the defendant fails to clarify how the alleged instructional error infringes on his constitutional rights. Essentially, the defendant's only argument is that we should overrule established precedent.

likely to be misunderstood by the jurors or that the jury was advised how to decide the case, it strains the meaning of constitutional claims to say that this claimed instructional error is constitutional in nature. *State* v. *Walton*, 227 Conn. 32, 65, 630 A.2d 990 (1993). Therefore, we decline to review the defendant's claim because the defendant has failed to allege a claim of constitutional magnitude as required by the second prong of *Golding*. See *State* v. *Hines*, 243 Conn. 796, 817–18, 709 A.2d 522 (1998); *State* v. *Walton*, supra, 63–65; *State* v. *Garrett*, 42 Conn App. 507, 518–19, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996). Similarly, the trial court's instruction did not affect the fairness and integrity of and public confidence in the judicial proceedings and, therefore, did not constitute plain error. *State* v. *Webb*, supra, 238 Conn. 458.

The judgment is affirmed.

In this opinion the other judges concurred.