STATE OF CONNECTICUT *v.* STANLEY T. VALINSKI
(AC 17466)

Landau, Zarella and O'Connell, Js.

Argued October 17, 2000—officially released February 6, 2001

*Robert J. McKay*, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Andrew M. Wittstein*, supervisory assistant state's attorney, and *Dawn Gallo*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. This case returns to the Appellate Court on remand from our Supreme Court for resolution of the remaining claims of the defendant, Stanley T. Valinski. See *State* v. *Valinski*, 254 Conn. 107, 756 A.2d 1250 (2000). The remaining claims pertain to the defendant's conviction under General Statutes (Rev. to 1995) § 14-215 (c) and are (1) whether the state's evidence was sufficient to sustain the jury's verdict of guilty, (2)

whether the prosecutor's representation to the jury that she would call a particular witness, but whom she did not call, deprived the defendant of his right to a fair trial, (3) whether the trial court failed to instruct the jury properly regarding the effect of the defendant's stipulation that he previously had been convicted of a violation of General Statutes § 14-227a (a) and (4) whether the sequence of the court's instructions improperly diluted the state's burden of proof. See *State* v. *Valinski*, supra, 131 n.19. We affirm the judgment of the trial court.

The relevant facts, as the jury reasonably could have found them, were set out in this court's first opinion in this matter. *State* v. *Valinski*, 53 Conn. App. 23, 731 A.2d 311 (1999), rev'd, 254 Conn. 107, 756 A.2d 1250 (2000). "The parties stipulated that on December 15, 1994, the defendant was convicted of operating a motor vehicle while under the influence of liquor or drugs in violation of § 14-227a (a). As a result of the conviction, the department of motor vehicles (department) suspended the defendant's operating privileges on January 13, 1995. On January 14, 1995, the department issued a work permit to the defendant.

"On Saturday, May 13, 1995, State Trooper Kevin Albanese stopped the defendant's vehicle on Route 44 in Canaan after twice observing it swerve in and out of the oncoming lane and nearly strike a guardrail post after it drifted over the white shoulder line. While waiting for the defendant's license and registration, Albanese asked the defendant where he had been. The defendant replied that he was returning from a fishing trip with his dog. After Albanese reviewed the [special or] work permit that the defendant handed him and noticed the restrictions on the permit, he again inquired of the defendant where he had been. This time, the defendant replied that he was returning from a fishing trip with several business associates, but, when asked, was unable to supply their names.

"After receiving the defendant's information, Albanese contacted Troop B in North Canaan and confirmed that the defendant's right to operate a motor vehicle was under suspension. Albanese detected a strong odor of alcohol and noticed that the defendant's eyes were red and glassy. On the basis of the defendant's erratic driving, the strong odor of alcohol and the appearance of the defendant's eyes, Albanese believed that the defendant was operating while under the influence of alcohol. After administering three field sobriety tests, Albanese confirmed his belief. Thereafter, Albanese arrested the defendant and transported him to Troop B, where the defendant refused to submit to any further testing." Id., 27–28.

The following procedural history is also relevant to this appeal. "Following a jury trial, a verdict of guilty was returned on the three noninfraction counts: two counts of operating a motor vehicle while his license was under suspension[1] and one count of operating a motor vehicle while under the influence of intoxicating liquor. On the charge of failure to drive on the right,[2] the court made a finding of guilty. . . . Thereafter, on June 25, 1997, the trial court granted the defendant's

---

[1] In the first part of a two part substitute information, the state charged the defendant with, inter alia, one count each of violation of General Statutes (Rev. to 1995) § 14-215 (a) and (c), which provide: "(a) No person to whom an operator's license has been refused, or whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. No person shall operate or cause to be operated any motor vehicle, the registration of which has been refused, suspended or revoked, or any motor vehicle, the right to operate which has been suspended or revoked. . . . (c) Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

[2] See General Statutes § 14-230 (a).

motion to set aside the verdict on one count of operating a motor vehicle while his license was under suspension [in violation of General Statutes (Rev. to 1995) § 14-215 (a)] and denied the defendant's motions for judgment of acquittal on the remaining charges and for new trial." Id., 28.

I

The defendant's first claim is that the state failed to present sufficient evidence to sustain the jury's verdict that he was guilty of operating a motor vehicle when his operator's license was under suspension in violation of § 14-215 (c). Specifically, the defendant claims that the state failed to prove the charge beyond a reasonable doubt because he was operating his motor vehicle within the scope of a work permit; see General Statutes § 14-37a;[3] which he alleged as an affirmative defense to the charge of operating under suspension. The defendant claims that he proved his affirmative defense by a preponderance of the evidence.[4] We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the

[3] General Statutes § 14-37a provides in relevant part: "(a) Any person whose operator's license has been suspended pursuant to any provision of this chapter or chapter 248 . . . may make application to the Commissioner of Motor Vehicles for a special permit to operate a motor vehicle to and from such person's place of employment or, if such person is not employed at a fixed location, to operate a motor vehicle only in connection with, and to the extent necessary, to properly perform such person's business or profession. . . . (c) A special operator's permit issued pursuant to this section shall be of a distinctive format and shall include the expiration date and the legend 'work only.' "

[4] We previously disposed of another portion of the defendant's sufficiency of the evidence claim, namely that he could not be in violation of General Statutes (Rev. to 1995) § 14-215 (c) because work permits are not mentioned in the statute. See *State* v. *Valinski*, supra, 53 Conn. App. 28–31.

defendant was guilty beyond a reasonable doubt. . . . In this process of review, the probative force of the evidence is not diminished because it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citations omitted.) *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995).

"In determining whether the defendant is guilty, [i]t is the sole right of the . . . trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the [trier] to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Furthermore, in considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . *State* v. *Roy*, 38 Conn. App. 481, 488–89, 662 A.2d 799 (1995) [cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Garrett*, 42 Conn. App. 507, 512, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996).

The defendant stipulated that his license to operate a motor vehicle was under suspension on May 13, 1995, the date in question. He argues that the preponderance of the evidence demonstrates that he was validly operating his motor vehicle pursuant to the work permit issued to him by the department.[5] The state does not dispute that at the time of his arrest, the defendant had

---

[5] In *State* v. *Valinski*, supra, 254 Conn. 121–29, our Supreme Court held that General Statutes (Rev. to 1995) § 14-37a may be alleged as an affirmative defense to a charge of violating General Statutes (Rev. to 1995) § 14-215 (c), operating a motor vehicle under a suspended license.

a valid work permit. The jury had to determine whether the defendant was operating his motor vehicle for purposes related to his employment[6] and, thus, within the scope of the work permit.

The jury heard testimony from Terry Zietler, a driver improvement analyst with the department, who testified that a work permit allows an individual to operate a motor vehicle for employment purposes while the individual's license is under suspension. The defendant called Donald Bradley, a department legal adviser, as an expert witness. Bradley testified that a work permit is a term "that the department uses to indicate that the right to operate a motor vehicle is restricted in some way" and described the scope of activities permitted under a work permit.[7]

Albanese testified that he stopped the defendant at 4 p.m. on Saturday, May 13, 1995, after observing the defendant's vehicle cross over the midline and shoulder line of the highway. He detected an odor of alcohol about the defendant. In response to a question from Albanese, the defendant replied that he had been fishing with his dog. After reviewing the defendant's work permit, Albanese again asked the defendant where he had been. This time the defendant responded that he had

---

[6] "The record indicates that with respect to a separate incident unconnected to this appeal, the defendant, a self-employed advertising agent, applied for a work permit on September 7, 1994, which was valid until December 13, 1994. In a letter dated January 9, 1995, the defendant requested an extension of the 1994 work permit. Thereafter, the defendant's work permit was extended until January 14, 1996. In the permit application, and again in his letter dated January 9, 1995, the defendant indicated that he needed the permit only to drive to meet with clients and to shoot, record and edit radio and television commercials." *State* v. *Valinski*, supra, 53 Conn. App. 26–27 n.7.

[7] Bradley also testified: "I use as an example when police call me that the person dropping their child off on the way back and forth to work, dropping a child off in school is probably not outside the scope. When they are leaving the bar at 2 a.m. on Sunday morning, that is pretty clearly outside the scope in most cases. Anything else is gray . . . ."

been fishing with some business associates, but he was unable to identify any of them. During trial, the defendant called one of his business associates as a witness. The business associate testified that he had been fishing with the defendant on the date in question. The state, however, impeached the business associate's testimony with a prior inconsistent statement concerning the month in which he went fishing with the defendant.

The jury was called on to determine the credibility of the witnesses, which is a jury's primary function. On the basis of our review of the record, we conclude that the jury reasonably could have found that the defendant had gone fishing with his dog on May 13, 1995. The jury also reasonably could have concluded that fishing was not related to the defendant's employment and that the defendant was operating his motor vehicle outside the scope of his work permit. The defendant, therefore, did not prove his affirmative defense by a preponderance of the evidence. Consequently, there was sufficient evidence for the jury to conclude that the state proved beyond a reasonable doubt that the defendant was operating a motor vehicle while his license was under suspension in violation of § 14-215 (c).

II

The defendant's second claim is that he was deprived of a fair trial pursuant to article first, § 8, of the constitution of Connecticut as a result of prosecutorial misconduct. He claims specifically that a prosecutor's "knowing use of misleading testimony may violate due process."[8] The defendant claims that the prosecutor's statement to the jury that a certain witness would be

---

[8] We note that the defendant refers to the statement that the prosecutor made to the jury as "testimony." The prosecutor's statement, however, was not testimony. It is well settled that statements made by counsel are not evidence. See *State* v. *Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993).

called to testify, but who was not in fact called, was false and a misrepresentation.

During trial, at the direction of the court, the prosecutor informed the jury that the state might call another witness and identified the individual by name to determine whether the individual was known to the jury. The state, however, did not call the individual to testify. The defendant did not object to the prosecutor's statement when it was made or when the state rested its case. He now claims that the prosecutor's statement was misleading because it gave the jury the impression that the state had more information against the defendant than it presented at trial.

"[T]his court will not review claims that were not properly preserved in the trial court. . . . A defendant may prevail on a claim of constitutional error not preserved at trial, however, if the defendant satisfies the four part standard set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)." (Citations omitted.) *State* v. *Jones*, 50 Conn. App. 338, 346–47, 718 A.2d 470 (1998), cert. denied, 248 Conn. 915, 734 A.2d 568 (1999). In this case, the defendant did not request that we review this unpreserved claim under *Golding.* " 'In the absence of such a request, we have, in the past, declined to review a defendant's claim under similar circumstances.' " Id., 347. Furthermore, the defendant's claim is devoid of legal analysis and is nothing more than a mere assertion of a violation of his right to due process. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). We therefore decline to review this claim.

III

The defendant's third claim is that the court improperly instructed the jury regarding the effect of the stipu-

lation that he previously had been convicted of operating a motor vehicle under the influence of intoxicating liquor in violation of § 14-227a (a). The defendant's argument is that because the state charged him with violating both subsections (a) and (c) of § 14-215 and the court failed to instruct the jury as to which of the violations the stipulation pertained, the jury was confused and had no choice but to find the defendant guilty of both charges.[9] The defendant claims that he was prejudiced because § 14-215 (c) carries a mandatory sentence and § 14-215 (a) does not. We disagree.

Although the defendant did not object at trial to the court's instruction, he seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40,[10] and the plain error doctrine. Practice Book § 60-5. We conclude that although his claim is reviewable under the first two prongs of *Golding* because the record is adequate for review and the claim involves a fundamental right to due process; see *State* v. *Delgado*, 50 Conn. App. 159, 170, 718 A.2d 437 (1998); *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994); the claim nevertheless fails because no constitutional violation clearly exists.

---

[9] The stipulation clearly stated, however, that the conviction for operating under the influence of intoxicating liquor was an element of § 14-215 (c). The stipulation was before the jury as court exhibit 1 and stated: "The State and the defendant do hereby stipulate to the fact that on December 15, 1994, in the Bristol Superior Court, the defendant was convicted of Operation under the Influence of Alcohol, in violation of Connecticut General Statutes § 14-227a (a). *This predicate conviction is an element of the offense of General Statutes § 14-215 (c)*." (Emphasis added.)

[10] "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

Under *Golding*, "a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Pearsall*, 44 Conn. App. 62, 68, 687 A.2d 1301, cert. denied, 240 Conn. 910, 689 A.2d 473 (1997). In making that determination, the jury charge "is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) Id.

The following facts are necessary to our resolution of defendant's claim. During trial, the state introduced into evidence, without objection by the defendant, a written stipulation that he previously had been convicted of violating § 14-227a (a). The stipulation correctly stated that "[t]his predicate conviction is an element of the offense of General Statutes § 14-215 (c)." In its instructions, the court told the jury that the defendant had been charged with violations of § 14-215 (a) and (c). The court stated: "Now, in one of those counts there is a claim that the defendant was operating under suspension when his license was suspended for a conviction of a violation of [§ 14-227a]. There is a stipulation for you to consider on that that is marked as court exhibit 1, and it relates directly to those facts, those elements." Thereafter, the jury found the defendant guilty of violating both subsections (a) and (c) of § 14-215. Subsequently, the court granted the defendant's

motion to set aside the verdict on the charge of operating a motor vehicle while under suspension in violation of § 14-215 (a).

Although the defendant claims that the jury was confused by the court's failure to state whether the stipulation pertained to subsection (a) or (c), the court's instruction clearly informed the jury that "one of those counts" involved the suspension of the defendant's license because of a conviction of § 14-227a. The stipulation itself, which was before the jury as court exhibit 1, clearly stated that the "predicate conviction is an element of the offense of General Statutes § 14-215 (c)." Thus, there is no merit to the defendant's claim that the jury was confused as to which count the stipulation applied. Furthermore, there is no claim that the stipulation did not apply to subsection (c), the charge of which the defendant was convicted. Even if the jury incorrectly applied the stipulation to subsection (a), the court's setting aside of the verdict on that count eliminated any prejudice to the defendant. Reading the charge as a whole, we conclude that the court properly instructed the jury, and there is no reasonable possibility that it was misled. See *State* v. *Delgado*, supra, 50 Conn. App. 170. Therefore, the record does not support the defendant's claim under *Golding* that a constitutional violation clearly exists and clearly deprived him of a fair trial, nor does it give rise to plain error because the instructions did not affect the fairness or integrity of the proceedings or result in a manifest injustice to the defendant. See *State* v. *Ryan*, 53 Conn. App. 606, 612, 733 A.2d 273 (1999).

IV

The defendant's final claim is that the sequence of the court's instructions to the jury improperly diluted the state's burden of proof in violation of his state and

federal constitutional rights.[11] Specifically, the defendant claims that the court instructed the jury that the defendant had to prove his affirmative defense by a preponderance of the evidence immediately after charging on operating a motor vehicle while under the influence of intoxicating liquor, rather than giving the instruction after the charge on operating a motor vehicle while his license was under suspension. The defendant concedes that he did not preserve this claim at trial, but maintains that we should review it pursuant to *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), *State* v. *Golding*, supra, 213 Conn. 239–40, and Practice Book § 60-5 (plain error). The defendant's claim is reviewable under the first two prongs of *Golding* because the record is adequate for review and the claim involves a fundamental right to due process. See *State* v. *Delgado*, supra, 50 Conn. App. 170; *State* v. *Walker*, supra, 33 Conn. App. 769. We are not persuaded, however, that a constitutional violation clearly exists.

The following additional facts and procedural history are necessary for the resolution of this claim. In its charge, the court instructed the jury on the law govern-

---

[11] The defendant invokes his due process rights under the fifth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitution of Connecticut. We note that the defendant, however, "does not claim . . . that he is entitled to any greater protection under the due process clause of the state constitution than he is under the analogous provision of the federal constitution. For purposes of this appeal, therefore, we treat the state and federal due process clauses as embodying the same level of protection." *State* v. *Austin*, 244 Conn. 226, 237 n.11, 710 A.2d 732 (1998).

The defendant also claims that the instructions violated his right to a jury trial by an impartial jury under the sixth and fourteenth amendments to the United States constitution, and article first, §§ 8 and 19, of the constitution of Connecticut. Because the defendant has failed to brief how the instructions violated his right to a jury trial or to an impartial jury, we decline to review the claim and deem it abandoned. See *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 550 n.2, 717 A.2d 850, cert. denied, 247 Conn. 940, 941, 723 A.2d 318 (1998).

ing the case and on how to apply it during deliberations. The court first instructed the jury on the state's burden of proving guilt beyond a reasonable doubt. The court then instructed the jury on the specific charges against the defendant. After it instructed the jury on the charge of operating a motor vehicle under the influence of intoxicating liquor, the court charged the jury on direct and circumstantial evidence. The court charged that the jury could rely on either or both types of evidence if the cumulative effect of the evidence on which the jury relied was that the state had proved the elements of the crimes beyond a reasonable doubt. Immediately thereafter, the court instructed the jury on the effect of the defendant's work permit and his burden of having to prove by a preponderance of the evidence that he was operating a motor vehicle within the scope of his work permit. Later in its charge, the court repeated the instruction to the jury that "the state must prove beyond a reasonable doubt, that the defendant was under the influence of intoxicating liquor while operating the motor vehicle" and that it is the state's obligation "to prove all of the elements charged against the defendant beyond a reasonable doubt."

As we stated concerning the defendant's third claim, under *Golding*, "a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The

test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Citations omitted; internal quotation marks omitted.) *State* v. *Pearsall*, supra, 44 Conn. App. 68.

We must determine, therefore, whether the court's instructions were improper in view of the entire charge. The defendant claims that the sequence of the court's charge improperly diluted the state's burden of proof. The defendant claims that the court presented the defendant's burden of proof on his affirmative defense of operating within the scope of his work permit immediately after giving an instruction on the charge of operating under the influence of intoxicating liquor. Our review of the transcript, however, reveals that after it gave the instruction on operating under the influence, the court charged the jury on direct and circumstantial evidence, and that the state must prove the elements of the crimes charged beyond a reasonable doubt. Only then did the court instruct the jury on the effect of having a work permit and that the defendant's burden of proof was by a preponderance of the evidence. Subsequently, the court again instructed the jury that the state had the burden of proving the charges against the defendant beyond a reasonable doubt.

On the basis of our review of the entire charge, we conclude that the court properly instructed the jury on the state's burden of proof for every element of the crimes charged beyond a reasonable doubt and on the defendant's burden of proving that he was operating within the scope of a work permit by a preponderance of the evidence. It was not reasonably possible that the

court's charge misled the jury as to the scope of the state's burden of proof. Accordingly, the record in this case does not support the defendant's claim that a constitutional violation clearly exists and clearly deprived him of a fair trial.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] The defendant also cannot prevail under the plain error doctrine. See Practice Book § 60-5. "[T]his court will reverse a judgment for plain error only in the truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 49 Conn. App. 606, 612, 716 A.2d 914, cert. denied, 247 Conn. 925, 719 A.2d 1171 (1998). We decline to review the defendant's claim under the plain error doctrine because we have concluded that the trial court's instructions to the jury did not affect the fairness or integrity of the proceedings or result in a manifest injustice to the defendant. See *State* v. *Sivri*, 46 Conn. App. 578, 590, 700 A.2d 96, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

